# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>AEH TRUCKING CO., LLC<br><br>Debtor(s) | Chapter: 7<br>Case Number: 1:16-bk-01608-RNO |
| JOHN P NEBLETT, Trustee for<br>the Bankruptcy Estate of<br>AEH TRUCKING, INC.<br>Plaintiff(s) | Adversary Number: 1-17-ap-00042-RNO |
| v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant(s) | Document No.: 13 & 15<br>Nature of Proceeding: Motion for Summary Judgment |

# OPINION[1]

Plaintiff, John P. Neblett ("Neblett"), Chapter 7 trustee for the bankruptcy estate of the Debtor, AEH Trucking LLC ("Debtor"), filed a three count Complaint against the United States of America, acting by and through the Internal Revenue Service ("IRS"). Neblett seeks the avoidance and recovery of alleged preferential transfers from the IRS. Alternatively, he seeks turnover of the funds seized and damages. Neblett filed a Motion for Summary Judgment ("Motion") as to Counts I and II and the IRS filed a Cross-Motion for Summary Judgment ("Cross-Motion"). Neblett's Motion as to Counts I and II is denied. The IRS's Cross-Motion is granted in part and denied in part as to Count I, and granted as to Count II. Neblett has withdrawn Count III, and it is therefore dismissed with prejudice.

---

[1] Drafted with the assistance of Maria Babajanian, Esq., Law Clerk.

1

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(E) and 157(b)(2)(F).

## II. Facts and Procedural History

The Debtor filed a voluntary Chapter 7 petition on April 15, 2016. The Debtor owed funds to the IRS for outstanding employment tax liabilities in excess of $731,727.50. The IRS states that the Debtor owed employment taxes for the last three quarters of 2013 and the first two quarters of 2014. United States' Statement of Undisputed Material Facts ¶ 2, ECF No. 15-1. Neblett alleges that the IRS seized the Debtor's funds pre-petition during the preference period, and seeks to avoid and recover those funds.

Neblett states that the IRS made two seizures, on January 29, 2016 and February 26, 2016. Pl.'s Concise Statement of Material Facts ¶ 13, ECF No. 13-1. The IRS first seized funds from the Debtor's bank account at Orrstown Bank. On January 21, 2016, the IRS sent a Notice of Levy for $921,696.18 to the bank. Pl.'s Concise Statement of Material Facts ¶ 9, ECF No. 13-1. On February 26, 2016, the IRS received $1,403.86 from the bank which was applied to tax obligations for the period ending December 31, 2013. Pl.'s Concise Statement of Material Facts ¶ 11, ECF No. 13-1; United States' Statement of Undisputed Material Facts ¶ 8, ECF No. 15-1.

The IRS also seized funds from the Debtor's accounts receivable. The Debtor performed hauling contracts for the United States Postal Service ("USPS") and was owed a balance for accounts receivable due from USPS. The IRS levied against the Debtor's USPS account and recovered $731,727.50 on January 29, 2016. This amount was applied towards the employment taxes obligations for the periods ending June 30, 2013, through June 30, 2014. Pl.'s Concise Statement of Material Facts ¶ 8, ECF No. 13-1; United States' Statement of Undisputed Material Facts ¶ 5, ECF No. 15-1.

2

Count I of the Complaint requests avoidance and recovery of these seizures as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550,[2] Count II alternatively demands turnover pursuant to § 542, and Count III demands damages pursuant to 26 U.S.C.S. § 7433. Neblett moved for summary judgment as to Counts I and II on March 14, 2018, and the IRS filed a Cross-Motion as to Counts I and II on March 15, 2018. Neblett's Motion states that he moves to dismiss Count III as discovery has failed to produce sufficient evidence. Mot. for Summ. J. ¶ 8, ECF No. 13. I will therefore dismiss Count III with prejudice and only consider the Motion and Cross-Motion as to Counts I and II. Briefs have been filed in support of, and in opposition to, the Motions. They are now ripe for decision.

**III.    Discussion**

    **A.    Standard to Decide a Motion for Summary Judgment Under F.R.B.P. 7056**

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable in bankruptcy adversary proceedings. The movant has the initial burden of proving that there is no genuine dispute of material fact based on "depositions, documents, affidavits, stipulations, admissions, and interrogatory answers." *In re Scalera*, 2013 WL 5963554, at *1 (Bankr. W.D.Pa. 2013). A material fact is one which affects the outcome of the suit under substantive law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011). Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 2578 (2006); *Celotex Corp. v. Catrett*, 447 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); *Rosen v. Bezner*,

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C.§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

996 F.2d 1527, 1530 (3d Cir. 1993); *In re Eury*, 544 B.R. 563, 565 (Bankr. W.D.Pa. 2016). The court must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001); *In re Eury*, 544 B.R. 563, 566 (Bankr. W.D.Pa. 2016).

The standard does not change when parties file cross motions for summary judgment. *Clevenger v. First Option Health Plan of N.J.*, 208 F.Supp.2d 463, 468 (D.N.J. 2002) (citing *Weissman v. U.S. Postal Serv.*, 19 F.Supp.2d 254 (D.N.J. 1998)). The court must consider the motions independently of one another and view the evidence on each motion "in the light most favorable to the party opposing the motion." *Id.* at 468-69 (citing *Williams v. Phila. Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa. 1993); *Matsushita*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986)).

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of facts that are not subject to reasonable dispute when they are generally known or capable of being accurately and readily determined by sources whose accuracy cannot reasonably be questioned. *In re LandSource Communities Dev. LLC*, 485 B.R. 310, 315-16 (Bankr. D.Del. 2013) (citing *In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995)). Judicially noticed items may include the docket, claims register, and documents from the bankruptcy case. *Id.* I take judicial notice of the documents filed in the Debtor's bankruptcy case and in this Adversary Proceeding.

 **B.** **Count I – Avoidance and Recovery of Preferential Transfer Pursuant to 11 U.S.C. §§ 547 and 550**

Neblett alleges that the seizures by the IRS constitute avoidable preferential transfers under 11 U.S.C. § 547 and may be recovered under § 550. Compl. ¶ 22, ECF No. 1. Section 547(b) provides that a trustee may avoid any transfer of the debtor's interest in property:

4

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Section § 550(a) further states that to the extent a transfer is avoided under § 547, the property transferred, or the value of such property, may be recovered from the transferee by the trustee for the benefit of the estate. The purpose of the preference rule is to "ensure that creditors are treated equitably, both by deterring the failing debtor from treating preferentially its most obstreperous or demanding creditors in an effort to stave off a hard ride into bankruptcy, and by discouraging the creditors from racing to dismember the debtor." *In re Molded Acoustical Prod., Inc.*, 18 F.3d 217, 219 (3d Cir. 1994).

The Complaint alleges that on or within 90 days before the filing of the Petition, the IRS seized cash from the Debtor's receivables and bank accounts and benefitted by receiving partial satisfaction of delinquent taxes, thereby satisfying the first and fourth required elements. Compl. ¶ 15-16, 19, ECF No. 1. Neblett also states that the seizures were made while the Debtor was insolvent for "an antecedent debt owed by the IRS before the [s]eizures were made," which enabled the IRS to receive more than it would have under the provisions of the Bankruptcy Code because tax liens are subordinate to administrative expenses and wage claims. Compl. ¶ 17-18, 20, ECF No. 1. Neblett argues that the seizures therefore constitute avoidable preferences under § 547(b).

5

The IRS denies that the "cash was for an antecedent debt owed by the IRS before the [s]eizures were made," and does not admit the other elements required under § 547 in its Answer. United States' Answer ¶ 17, ECF No. 5. I will first address the seizure of the bank account funds and then the seizure of the USPS account.

### i. Bank Account Seizure

In its Cross-Motion for Summary Judgment, the IRS first argues that the $1,403.86 collected from the Debtor's bank account is well below the minimum threshold that is required for a claim under § 547(c)(9). United States' Br. In Support of its Cross-Motion for Summ. J. 5, ECF No. 15-2.

Section 547(c)(9) provides that:

> (c) The trustee may not avoid under this section a transfer--
> …
> (9) if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $6,425.

Section 101(8) defines a consumer debt as one that is "incurred by an individual primarily for a personal, family, or household purpose." The debt due to the IRS is for employment taxes, commonly known as "trust fund" taxes. *In re Treacy*, 255 B.R. 656, 662 (Bankr. E.D.Pa. 2000) (citing *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978)). Courts have held that trust fund taxes are not consumer debts. *In re Kempkers*, 2012 WL 4953076, at *3 (Bankr. D.Idaho 2012) (finding that business tax obligations, including liabilities for unpaid employee withholding taxes, are non-consumer debts); *In re Traub*, 140 B.R. 286, 289 (Bankr. D.N.M. 1992) (finding that the trust fund portion of taxes is not a consumer debt). I find that there is no genuine dispute of material fact regarding the classification of the debt as employment/trust fund taxes, nor is there a dispute regarding the amount of the seizure from the

6

bank account as $1,403.86. Section 547(c)(9) is therefore dispositive as to this matter. I find that the threshold amount has not been met to avoid the transfer of funds from the Debtor's bank account under § 547. When considering the Motion and Cross-Motion, I must view the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. Viewing the facts in a light most favorable to the IRS, Neblett's Motion for Summary Judgment as to Count I for the bank account seizure is denied. Viewing the facts in a light most favorable to Neblett, the IRS's Cross-Motion as to Count I is granted in part for the $1,403.86 bank account seizure. I now turn to the issue of whether the seizure of funds from the USPS account constitutes an avoidable preference.

### ii. USPS Account - Setoffs vs. Avoidable Transfer

The IRS argues that the seizure of USPS account funds constituted a setoff of debt owed by United States' agencies and "such setoffs cannot be avoided as preferential transfers under 11 U.S.C. § 547," and further that the trustee cannot show that the IRS would have received more than it would have in a Chapter 7 if such transfer were not made. United States' Cross-Motion for Summ. J., 2, ECF No. 15. If the seizures were in fact setoffs, then this would be dispositive and preclude recovery under § 547. I must therefore first determine if the seizures could qualify as setoffs, rather than preferences.

The IRS argues that the prepetition transactions were setoffs rather than avoidable "transfers" under § 547. United States' Br. in Support of its Cross-Motion for Summ. J. 5, ECF No. 15-2. Under § 553, with some exceptions, a creditor may "offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . ." 11 U.S.C. § 553(a). If the seizure of funds qualifies as a valid setoff under § 553, then § 547(b) does not apply. *In re Nase*, 297 B.R. 12, 18 (Bankr. W.D.Pa. 2003). In *In re Nase*, a Debtor brought an

7

Case 1:17-ap-00042-RNO    Doc 29    Filed 06/28/18    Entered 06/28/18 14:57:56    Desc
Main Document    Page 7 of 16

adversary action to avoid and recover, under §§ 547(b), 553(a), and 542(a), a tax refund deposited into her checking account which her credit union applied to satisfy a debt. *Id.* at 15. The Court noted:

> Where a pre-petition setoff lies at the heart of a preference action, it first must be determined if the setoff was valid for purposes of § 553 of the Bankruptcy Code. Section 547(b) can apply only if the setoff was not valid for bankruptcy purposes. *Durham v. SMI Industries Corp.*, 882 F.2d 881, 882 (4th Cir.1989). As we shall see, GNC exercised a valid setoff which was preserved for bankruptcy purposes when it applied debtor's income tax refund to the past-due debt she owed it. Debtor therefore may not utilize § 547(b) to avoid this transaction.

*Id.* at 18. Likewise, in *In re Comer*, the Court distinguished a preferential transfer from a setoff, noting that § 547 only applies if a setoff is invalid and no right to setoff exists:

> In order for there to be a preferential transfer under 11 U.S.C. § 547(b), there is a requirement of a pre-petition "transfer" of an interest of the debtor in property. *See* 11 U.S.C. § 547(b) (2006). Transfer is a term of art which is defined in 11 U.S.C. § 101(54). The term "setoff" is omitted from the definition of transfer in 11 U.S.C. § 101(54). The legislative history to 11 U.S.C. § 101(54) explains the omission in clear terms: "inclusion of 'setoff' is deleted. The effect is that a 'setoff' is not subject to being set aside as a preferential 'transfer' but will be subject to special rules." *See* 5 *Collier on Bankruptcy* ¶ 553.09[2][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Further, *Durham v. SMI Indus. Corp.,* 882 F.2d 881, (4th Cir.1989), stands for the proposition that only if a setoff is invalid and no right of setoff exists in bankruptcy is 11 U.S.C. § 547 applied. *See id.* at 882.
>
> In summary, the Debtors cannot utilize 11 U.S.C. § 547 for purposes of recovery of the setoff unless the setoff was not valid. The Debtors have not put into issue the validity of the setoff by any factual allegations in their complaint. Accordingly, for purposes of this decision and order, there was a proper and valid setoff of the Debtors' 2006 federal income tax refund against the pre-petition indebtedness owed by the Debtors to the SSA for overpayment of Social Security benefits.
>
> The only statutory basis upon which the Debtors can rely in order to recover a setoff is 11 U.S.C. § 553(b).

8

386 B.R. 607, 608-09 (Bankr. W.D.Va. 2008). The Court also noted that three elements are required to establish a right to setoff: (1) a debt owed by the creditor to the debtor which arose pre-petition; (2) a claim of the creditor against the debtor that also arose pre-petition; and (3) mutuality of the debt and claim. *Id.* at 609-10; *In re Wade Cook Financial Corp.*, 375 B.R. 580, 594 (B.A.P. 9th Cir. 2007).

The mutuality of debt requirement means that the claim and debt offset must be between the same parties. *In re Moore*, 350 B.R. 650, 654 (Bankr. W.D.Va. 2006). The Third Circuit stated that "to be mutual, the debts must be in the same right and between the same parties, standing in the same capacity." *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 59 (3d Cir. 1990) (quoting L. King, 4 Collier on Bankruptcy, ¶ 553.04[3], at 553–22 (15th ed. 1979); *see also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996). The Complaint alleges that the IRS was owed a debt by the Debtor pre-petition and that the USPS owed accounts receivable to the Debtor. However, it remains a question whether there is a mutuality of the debt and claim.

### a. Mutuality of Debt and Right to Setoff

The IRS allegedly levied against the Debtor's USPS account to pay outstanding employment tax obligations. Pl.'s Concise Statement of Material Facts ¶ 7-8, ECF No. 13-1. An exception to the mutuality rule "allows setoff by departments different from those holding actual claims within the federal government, which in the aggregate is considered to be a single 'unitary creditor' for setoff purposes." *In re Moore*, 350 B.R. 650, 654 (Bankr. W.D.Va. 2006). I must first determine whether the IRS had a right to setoff, and then determine whether the USPS and the IRS may be considered a single creditor for setoff purposes.

9

The Bankruptcy Code does not create a right to setoff, but instead preserves the right where it exists under non-bankruptcy law. *In re Kunkel*, 582 B.R. 184, 186 (Bankr. W.D.Mich. Feb. 5, 2018); *see also In re Gould*, 401 B.R. 423 (B.A.P. 9th Cir. 2009) ("... § 553 does not establish independent setoff rights in bankruptcy but rather preserves setoff rights under law independent of the Bankruptcy Code."). The Internal Revenue Code provides that the IRS has the right to setoff a taxpayer's overpayment of tax against a tax liability for prior years:

> (a) General rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.

26 U.S.C. § 6402(a); *In re Carpenter*, 367 B.R. 850, 856 (Bankr. M.D.Fla. 2006) ("The IRS has a statutory right of setoff pursuant to 26 U.S.C. § 6402(a) . . ."); *In re C.F. Foods, L.P.*, 265 B.R. 71, 79 (Bankr. E.D.Pa. 2001) (acknowledging the statutory grant of setoff authority); *In re Orlinski*, 140 B.R. 600, 602 (Bankr. S.D.Ga. 1991) ("The Internal Revenue Code provides that the IRS has the right to setoff a taxpayer's overpayment of tax against a tax liability for prior years."). I find that the IRS has a statutory right to setoff. Whether this right of the IRS to setoff applies to the USPS depends on whether the USPS and the IRS can be considered a single unitary creditor.

In *In re Moore*, the Court acknowledged that "a general exception to the mutuality rule allows setoff by departments different from those holding actual claims within the federal government, which in the aggregate is considered to be a single 'unitary creditor' for setoff purposes." 350 B.R. 650, 654 (Bankr. W.D.Va. 2006). In *In re Nuclear Imaging Systems, Inc.*, the Bankruptcy Court for the Eastern District of Pennsylvania noted money owed to a debtor by

one federal agency could be used to offset tax liabilities owed by a debtor to another federal agency:

> In general, the United States has the same common law right to setoff as any other creditor. . . . Moreover, "[o]utside of bankruptcy, the federal government is considered a single-entity that is entitled to set off one agency's debt to a party against that party's debt to another agency." *United States v. Maxwell,* 157 F.3d 1099, 1102 (7th Cir.1998).
>
> . . .
>
> Based upon the holding in *Cherry Cotton Mills,* and recognizing that section 553(a) of the Bankruptcy Code preserves setoff rights of a creditor that exist outside of bankruptcy, the vast majority of courts have concluded, within the confines of a bankruptcy case, that all agencies of the United States constitute a single "unitary creditor" for purposes of setoff under section 553.
>
> . . .
>
> Consistent with this approach, the IRS has been permitted to setoff funds due to debtors from the Department of Agriculture against federal tax obligations. *In re Medina.* The IRS was also permitted to setoff Customs Service refunds due to the debtor against tax liabilities owed. *In re Whimsy, Inc.,* 221 B.R. 69 (1998)
>
> I see no basis to conclude in this contested matter that the IRS has no common law right to setoff a tax obligation owed by these debtors against Medicare receivables owed to the debtors from HCFA. *See In re Alliance Health of Fort Worth, Inc.* Had these debtors not filed for bankruptcy, such a setoff would have been permitted under federal law. Accordingly, to the extent that NPF X, Inc. opposes the instant motion on the basis of a lack of mutuality, its opposition is unpersuasive.

260 B.R. 724, 733-34 (Bankr. E.D.Pa. 2000).

39 U.S.C. § 201 establishes the USPS "as an independent establishment of the executive branch of the Government of the United States." The Third Circuit has stated that the USPS is an "'independent establishment' of the executive branch and, thus, is part of the government." *Anselma Crossing, L.P. v. U.S. Postal Serv.*, 637 F.3d 238, 240 (3d Cir. 2011) (quoting *U.S.*

*Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744, 124 S.Ct. 1321, 1327, 158 L.Ed.2d 19 (2004)).

The District Court for the District of Delaware noted that in *Flamingo*, the Supreme Court "emphasized that although the sue-and-be-sued clause waived the Postal Service's sovereign immunity, Congress did not 'strip it of its governmental status,' and that the USPS remains a 'federal entity.'" *Jeffries v. Potter*, 2008 WL 2607856, at *2-3 (D.Del. 2008). The Court further stated that "[a]s *Flamingo* makes clear, the USPS is a government agency." *Id.* at *4 (citing *Baker v. Runyon*, 114 F.3d 668, 669 (6th Cir. 1998); *Robinson v. Runyon*, 149 F.3d 507, 516 (7th Cir. 1997)).

Several recent decisions have also found that the USPS is a government agency. *Eagle Fence Co. v. V.S. Elec., Inc.*, 324 F.Supp.2d 621, 623 (E.D.Pa. 2004) ("The USPS is a government agency."); *State Farm Mut. Auto. Ins. Co. v. United States*, 2008 WL 2019364, at *1 (D.Del. 2008) ("Defendant United States Postal Service ("USPS") is a United States government agency."); *Waller v. U.S. Postal Serv.*, 2013 WL 3245204, at *4 (W.D.Pa. 2013). I find that the USPS is indeed a federal government agency, thereby satisfying the mutuality requirement. For the reasons stated above, I find that the possibility that the IRS seized funds as part of a valid setoff under § 553 presents a genuine dispute of material fact. Viewing the facts in a light most favorable to the IRS as the non-moving party, Neblett's Motion as to Count I for the USPS seizure of funds is denied. I will next address the Cross-Motion as to the USPS account.

        **b.**         **Potential Disallowance of Setoff Pursuant to 11 U.S.C. § 553**

In its Cross-Motion for Summary Judgment, the IRS argues that it is entitled to summary judgment as to Count I because the seizure of the USPS account constitutes a valid setoff rather than a preference. United States' Cross-Motion for Summ. J. 2, ECF No. 15. I must also deny the

IRS's Cross-Motion because pursuant to § 553(b), recovery by a trustee in limited circumstances is possible. I note that in the Complaint, Neblett does not contest the validity of a potential setoff, and therefore any potential recourse for a trustee to recover is only available under § 553. *See In re Hurt*, 579 B.R. 765, 769 (Bankr. W.D.Va. 2017) ("Here, the validity of the setoff has not been called into question by any allegation of the Complaint, and a cause of action to recover it is not available under Section 547(b). Recourse, if any, lies exclusively within Section 553 of the Bankruptcy Code."). Section 553(b)(1) states:

> if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any *insufficiency on the date of such setoff is less than* the insufficiency on the *later* of--
> (A) 90 days before the date of the filing of the petition; and
> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(emphasis added). The definition of "insufficiency" under § 553(b)(2) is "the amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim." Simply stated, § 553(b) allows a trustee to recover pre-bankruptcy setoffs in which a creditor improves its position within 90 days of the filing of the petition. *In re Hurt*, 579 B.R. 765, 770 (Bankr. W.D.Va. 2017). Congress enacted this provision out of concern that "creditors, primarily banks, that had mutual accounts with the debtor would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the 'insufficiency,' to the detriment of the other creditors." *Lee v. Schweiker*, 739 F.2d 870, 877 (3d Cir. 1984). Section 553(b)(1) therefore prevents creditors from deliberately timing a setoff when its debt peaks in order to gain an advantage. *In re First Ambulance Ctr. of Tennessee, Inc.,* 182 B.R. 198, 200 (Bankr. M.D.Tenn. 1995) (citing *Matter of Springfield Casket Co.*, 21 B.R. 223, 227 (Bankr. S.D.Ohio 1982)).

A determination of whether a trustee can recover under § 553(b) requires finding the amount of the insufficiency on the first date of the preference period, the first date there was an insufficiency during the preference period, and the insufficiency on the setoff date. *In re Ahmad*, 536 B.R. 152, 157-58 (Bankr. E.D.Pa. 2015). Neither the IRS nor Neblett have made allegations regarding the specific amount of the insufficiency on these dates. At this stage, I do not have a sufficient record to decide whether § 553(b) would permit recovery by Neblett as the trustee. Summary judgment in favor of the IRS is therefore denied as to Count I for the USPS seizure of funds.

C.     **Count II – Demand for Turnover Pursuant to 11 U.S.C. § 542**

Neblett alleges in Count II of the Complaint that the cash seized by the IRS from the Debtor's accounts receivable and bank account are "property of the estate as defined under Section 541 . . ." Compl. ¶ 25, ECF No. 1. Neblett seeks turnover under § 542 of funds seized by the IRS because they are in possession of alleged property of the estate. Pl.'s Mem. of Law in Support of Mot. for Summ. J. 9, ECF No. 13-2. The IRS argues that § 542 does not apply because "the prepetition funds that the Internal Revenue Service ("IRS") received and applied to the debtor's prepetition federal tax liabilities do not constitute 'property of the estate' that is subject to turnover under 11 U.S.C. § 542." United States' Cross-Motion for Summ. J. 2, ECF No. 15.

Section 542(a) states that:

> . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Neblett does not dispute that the funds were levied upon and seized pre-petition. However, the IRS argues that when funds are seized *and* applied to outstanding liabilities before a petition is filed, a debtor's interest in cash terminates. United States' Br. in Support of its Cross-Motion for Summ. J. 4, ECF No. 15-2.

Neblett cites the Supreme Court case of *United States v. Whiting Pools, Inc.* for the proposition that property which has been levied upon at the time of the filing of the petition, and which is in the possession of a creditor, is subject to turnover pursuant to § 542(a). Pl.'s Mem. of Law in Support of Mot. for Summ. J. 11, ECF No. 13-2. I find *Whiting Pools* to be distinguishable here. In that case, the Supreme Court found that because the IRS had seized tangible personal property to satisfy a tax lien pre-petition, the Debtor maintained a legal or equitable interest in the property under § 541(a)(1). *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 202, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515 (1983). It noted that when an entity holds property of the debtor, including repossessed property, it may be drawn into the estate. *Id.* at 2314. In contrast, here the IRS seized cash and funds from accounts receivable which were applied pre-petition to tax liabilities. In *In re Coghlan*, the Court distinguishes the seizure of cash under § 542(a):

> The sole issue before the Court is whether money paid to the IRS pursuant to a federal tax levy is subject to turnover pursuant to 11 U.S.C. § 542, when the money was not only levied, but also paid to the IRS before Debtor filed her Chapter 13 petition.
>
> …
>
> The Supreme Court's interpretation of § 541(a) ensures that virtually all property in which the debtor has an identifiable interest will result in that property's inclusion in the debtor's bankruptcy estate. Nevertheless, neither § 541 nor Whiting Pools addresses whether a debtor has an underlying interest in cash that was paid to the IRS prior to a debtor's filing for bankruptcy.
>
> …

15

> Finally, the case law is uniform in holding that a debtor's property interest in cash terminates when the monies have been both levied *and* collected.
>
> …
>
> This case is distinguishable from *Whiting Pools* because Debtor had no legal or equitable interest in the money when she filed for bankruptcy. The Board complied with the notice of levy and paid the IRS the money it owed Debtor before she filed for bankruptcy. The IRS had no need to conduct a sale or take further action in order to use the money to reduce Debtor's tax liability. Consequently, Debtor's property interest in the money terminated once the Board turned it over to the IRS. Because Debtor retained neither a legal nor equitable interest in the money when she filed her petition for bankruptcy, the IRS cannot be compelled to turn the money over to Debtor's bankruptcy estate.

227 B.R. 304, 305-308 (D.Ariz. 1998); *see also In re Gunthorpe*, 280 B.R. 893, 895 (Bankr. S.D.Ala. 2001) (finding that § 542 does not apply when a debtor has no title or possession to property). I find that because the IRS had undisputedly seized funds and applied them pre-petition to tax liabilities, they are no longer property of the estate and therefore cannot be subject to turnover under § 542. For these reasons, Neblett's Motion for Summary Judgment as to Count II is denied and the IRS's Cross-Motion for Summary Judgment as to Count II is granted.

### IV. Conclusion

Neblett's Motion is denied as to Counts I and Count II. The IRS's Cross-Motion for Summary Judgment is granted in part and denied in part as to Count I and granted as to Count II. Count III is dismissed with prejudice. Judgment will be entered consistent with this opinion.

By the Court,

*[signature]*

Robert N. Opel, II, Chief Bankruptcy Judge (BI)

June 28, 2018

16

Case 1:17-ap-00042-RNO    Doc 29    Filed 06/28/18    Entered 06/28/18 14:57:56    Desc
Main Document    Page 16 of 16